591 A.2d 320

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Linda GETTEMY, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 28, 1991.

Filed May 24, 1991.

Russell B. Korner, Jr., Asst. Dist. Atty., Uniontown, for Com., appellant.

Kenneth B. Burkley, Greensburg, for appellee.

Before DEL SOLE, FORD ELLIOTT and BROSKY, JJ.

DEL SOLE, Judge:

This is an appeal by the Commonwealth from the trial court's granting of Appellee's omnibus pre-trial motion to quash/habeas corpus petition.

This case stems from an investigation involving the October 1988 disappearance of Mrs. Ada Groomes and a 1976 Dodge Motorhome, she owned with her husband. In the course of the investigation, the Pennsylvania State Police contacted over one hundred witnesses. News of the disappearance was disseminated through newspaper and television releases. In May of 1989, Appellee, Linda Gettemy and her boyfriend, John Neckerauer, Jr. were interviewed concerning the disappearance of Mrs. Groomes and the motorhome, by Trooper Robert Hill of the Pennsylvania State Police. Both denied any knowledge of the disappearance of either Mrs. Groomes' or the motorhome, although both indicated they had learned from Mrs. Groomes husband that she had joined some type of cult in Arizona where she was presumably in possession of the motorhome. Mrs. Groomes has never been found.

In October, 1989, State Police received information from an individual who stated the motorhome had been stored on his property in Tampa, Florida, since being brought there sometime between December, 1988 and March 1989, by Mr. Neckerauer. (N.T. at 43, 12–18–89). Immediately after receiving this information, state police received a telephone call from Mr. Neckerauer, who informed the police the motorhome had been given to him by Mr. Groomes just prior to the disappearance of Mrs. Groomes and that he was aware of the location of the motorhome since that time. (N.T. at 49, 12–18–89).

Appellee was charged with violations of 18 Pa.C.S.A. § 903 (Criminal Conspiracy), § 5101 (Obstructing Administration of Law or Other Governmental Function), § 4910 (Tampering with or Fabricating Physical Evidence) and § 5105 (Hindering Apprehension or Prosecution).

A preliminary hearing before a District Justice was held. Trooper Craig of the Pennsylvania State Police testified that his investigation into the disappearance of Mrs. Groomes and the motorhome had taken him to Virginia, where a witness stated he had seen Appellee and Mr. Neckerauer in the motorhome. (N.T. at 59–60).[1] Additional testimony by State Police officers concerned a witness who claimed that early in October, 1988, she had assisted Appellee in fixing a window in the motorhome in question. The hearing resulted in Appellee being held for court along with Mr. Neckerauer on the above charges. Appellee then filed the motion to quash alleging the Commonwealth failed to present a prima facie case at the preliminary hearing. The trial court granted the motion and dismissed all charges without prejudice against Appellee. The Commonwealth then filed this timely appeal.

On appeal, the Commonwealth asks whether providing false answers in response to questions by law enforcement officials constitutes the offense of hindering apprehension or prosecution. 18 Pa.C.S. § 5105(a)(5) provides:

(a) Offense defined. A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

(5) volunteers false information to a law enforcement officer.

Appellee contends that this section can not apply to her because she did not *volunteer* false information to the police as proscribed by the statute. We agree.

The resolution of this issue requires us to contemplate the legislative intent in order to determine what the statute prohibits. Accordingly, we start with the definition of the verb "to volunteer":

[T]o offer (oneself or one's services) for some undertaking or purpose; ... to give, bestow, or perform *without*

---

1. The testimony indicated that although the witness had observed Linda Gettemy on two occasions when the motorhome was present in Virginia, he could not state who was in the motorhome when he observed it in October of 1988. (N.T. at 59, 12–18–89).

*being asked* ...; to say, tell, or communicate voluntarily....

*The Random House Dictionary of the English Language,* copyright 1981; emphasis supplied.

 We note that the courts of New Jersey were faced with this exact issue in *State v. D'Addario,* 196 *N.J.Super.* 392, 482 *A.*2d 961 (1984). The New Jersey Superior Court stated that this definition, particularly the emphasized language, supports the conclusion that the meaning of "volunteer" as used in N.J.S.A. 2C:29-3a(7), is that the accused must take the initiative in giving false information. We point out that the wording of the New Jersey statute is identical to that of the Pennsylvania statute, as both statutes are derived from the Model Penal Code. The court in *D'Addario,* stated that the statute applied only to those persons who take the initiative in supplying false information to law enforcement officials.

Recognizing that we are not bound by the decisions of a sister state, we, nevertheless find the reasoning of the New Jersey Court to be persuasive. The facts of the instant case make it clear that Appellee did not take the initiative in supplying false information to the law enforcement officers. Her answers, misleading as they were, were given in response to the officers questions. Additionally, the Official Comment to 18 Pa.C.S. § 5105 states that this section is derived from Section 242.3 of the Model Penal Code. The comment to this section provides:

> Paragraph (5) prohibits volunteering false information to the law enforcement authorities. Mere failure to report a crime is not proscribed by this section. Neither is giving misleading or even false answers to inquiries initiated by the police.... This provision is intended to reach those who take the initiative in throwing the police off track.

As a result, we hold that providing false answers in response to questions initiated by law enforcement officers does not constitute hindering apprehension or prosecution.

Appellant next questions whether or not a prima facie case was presented against Appellee relative to the charges

510

of tampering with or fabricating physical evidence, obstructing administration of law or other governmental function and criminal conspiracy.

 The Commonwealth bears the burden at a preliminary hearing of establishing at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it. *Commonwealth v. Prado*, 481 *Pa.* 485, 393 *A.*2d 8 (1978). The evidence must be such that if presented at trial, it would warrant submitting the case to the jury. *See Commonwealth v. Wojdak*, 502 *Pa.* 359, 466 *A.*2d 991 (1983). In its brief, Appellant maintains that sufficient evidence was presented to show that all of the crimes were committed and that Appellee and Neckerauer were the ones most likely to have committed them. Appellant failed to develop this claim other than to aver that the transcript of the preliminary hearing is replete with testimony supporting the charges. We can not agree.

 Appellee was also charged with Tampering with or fabricating physical evidence. 18 Pa.C.S. § 4910 provides:

A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; ...

From our review of the record we are unable to state the Commonwealth established all of the elements of this crime. The record establishes through the testimony of the investigating police officers, only that certain witnesses reported that Appellee was present in Virginia and Florida when the motorhome was seen in those states. Nothing in the record reveals that Appellee removed the motorhome with the intent to impair its availability. Accordingly we agree with the trial court that this crime did not warrant submission to the jury.

■ Appellee was also charged with obstructing the administration of law or other governmental function. 18 Pa.C.S. § 5101 states:

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, ...

After a careful reading of this statute it is apparent that it could apply to Appellee only under the "any other unlawful act" clause. Since we already have determined Appellees responses to the police officers questions was not a violation of § 5105(a)(5), we likewise are unable to say her conduct falls under the "any other unlawful act" clause.

■ The final charge against Appellee concerns two counts of criminal conspiracy. 18 Pa.C.S. § 903 provides:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Criminal conspiracy requires that the defendant with "intent" to promote or facilitate a crime "agrees" to aid another in the planning, attempt or commission of the crime. *Commonwealth v. Carter*, 272 *Pa.Super.* 411, 416 *A.*2d 523 (1979). Nothing in the record before us demonstrates any evidence of an agreement between Appellee and either Mr. Neckerauer or Mr. Groomes. At the preliminary hearing, the Commonwealth stated that several witnesses had told them of observing Appellee along with Mr. Neckerauer in or near the motorhome. This alone does not provide enough evidence of the necessary agreement to make out a

prima facie case of criminal conspiracy between Appellee and Mr. Neckerauer. Additionally the only connection between Appellee and Mr. Groomes which appears in the record is that Mr. Groomes had told Appellee that Mrs. Groomes was probably driving the motorhome home somewhere in Arizona. Once again this testimony standing alone is insufficient to make out a prima facie case of criminal conspiracy against Appellee.

Order Affirmed.